IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DONALD HETTER

    Petitioner,

v.                                                        Civ. No. 15-00489 SCY/KBM

THOMAS PEREZ, *in his official capacity
as the Secretary of Labor*, UNITED STATES
DEPARTMENT OF LABOR,

    Respondents.

## **MEMORADUM AND OPINION ORDER**

THIS MATTER comes before the Court on Petitioner Donald Hetter's Petition to Modify or Set Aside Final Decision and Final Agency Action. ECF No. 13.  Plaintiff contends that the Department of Labor's (DOL) decision to deny him wage-loss benefits was arbitrary and capricious and must therefore be reversed.  ECF No. 13 at 1. As explained below, because the Court concludes that the DOL's decision was not arbitrary and capricious, the Court DENIES Plaintiff's petition.

### I.    BACKGROUND

Because the parties are familiar with the facts and procedural history, the Court will briefly summarize the background of this case and reserve discussion of the pertinent facts for its analysis. Petitioner's claims arise under the Energy Employees Occupational Illness Compensation Program Act (EEOICPA), 42 U.S.C. §§ 7384 *et seq.*  The EEOICPA is a federal compensation statute for covered employees or their eligible survivors of the Department of Energy, its predecessor agencies, and certain contractors, subcontractors, and vendors. 42 U.S.C. §§ 7384-7384d. The EEOICPA, in part, compensates covered employees for illnesses caused by

1

exposure to radiation and other toxic substances at covered facilities as well as provides benefits to certain former uranium mine workers who have been found eligible for benefits by the Department of Justice under Section 5 of the Radiation Exposure Compensation Act (RECA). *Id.*; 42 U.S.C. § 7384u. Broadly stated, under Part B of the EEOICPA, an individual who received benefits under the RECA is also entitled to a lump sum payment of $50,000 under the EEOICPA. 42 U.S.C. § 7384u. Further, a determination that an individual is entitled to benefits under Part B of the EEOICPA is deemed to be a determination under Part E that the individual contracted a covered illness due to work-related exposure to a toxic substance at a covered facility. 42 U.S.C. 7385s-4(a). Despite this, a claimant seeking wage-loss benefits under Part E still has the burden to establish that "he or she meets the statutory criteria for those benefits[.]" *Lott v. Dep't. of Labor*, No. 12-00228, 2014 WL 5169078, *3 (D. Nev. Sept. 26, 2014) (unpublished).

In July 2007, Petitioner, a former uranium mine worker, sought benefits under both Part B and Part E the EEOICPA. AR 1406-12; 1420. In October 2007, the Final Adjudication Branch (FAB) of the DOL's Office of Workers' Compensation Programs (OWCP) issued a final decision accepting Plaintiff's claim under Part B and Part E for the accepted conditions of pulmonary fibrosis, fibrosis of the lung, silicosis, and pneumoconiosis. AR 1366-71. Pursuant to the decision, Petitioner was awarded $50,000 under Part B. AR 1370. Under Part E, Petitioner's whole body impairment was rated to be 38% and he was awarded $95,000. AR 1267-72. In December 2012, Petitioner filed an additional claim under Part E due to chronic obstructive pulmonary disease (COPD) and asthma. AR 835-42. In June 2013, the FAB issued a final decision awarding Petitioner medical benefits under Part E for those conditions. AR 770-

76. Petitioner's whole body impairment was increased by 18% and he was awarded additional impairment compensation of $45,000. AR 321-26.

Relevant to the issues before the Court, Petitioner subsequently sought wage-loss benefits under Part E in November 2013. AR 651-52. Petitioner initially withdrew this application but re-filed in April 2014. AR 531, 539. Petitioner claimed wage-loss beginning "on or about 2005" through January 2013. AR 527, 531. In August 2014, the OWCP issued a recommended decision to deny Petitioner's wage-loss claim. AR 349-59. Petitioner filed objections to the OWCP's recommended decision and requested a hearing. AR 338-39. The FAB held a hearing in November 2014. AR 234-81. Following the hearing, Petitioner submitted further medical evidence to support his wage-loss claim. In February 2015, the FAB concluded that Petitioner failed to submit sufficient probative evidence to establish that Petitioner suffered wage-loss due to his accepted conditions. AR 179. The DOL accordingly issued a final decision denying Petitioner's wage-loss claim under Part E. AR 170-79. Petitioner requested reconsideration of the FAB's final decision which was subsequently denied. AR 1-4. Petitioner presently seeks review under 42 U.S.C. § 7385s-6(a) which grants a person adversely affected or aggrieved by a final decision of the DOL to review of that order in district court.

## II.     STANDARD OF REVIEW

The standard of review for actions seeking review of final decisions under Part E is codified at 42 U.S.C. § 7385s-6(a). This provision provides the court with the power to "affirm, modify, or set aside, in whole or in part" the DOL's decision "only if the court determines that such decision was arbitrary or capricious." *Id.* Due to the similarity between the standard of review within Part E and the "arbitrary and capricious" standard set forth in the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), courts have looked to case law interpreting the

3

APA's arbitrary and capricious standard of review in actions challenging Part E denials. *Stephens v. U.S. Dep't of Labor*, 571 F.Supp.2d 186, 191 (D.D.C. 2008).

In reviewing agency actions under this standard, courts consider several factors, including whether the agency: (1) relied on factors not intended to be considered; (2) failed to consider an important aspect of the problem; (3) explained its decision in a manner that contradicts the evidence; or (4) reached a conclusion so implausible that it cannot be explained by a difference in view or the product of agency expertise. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). Accordingly, the court's review, while "searching and careful," is narrow. *Custer Cnty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1030 (10th Cir. 2001) (internal quotation marks and citation omitted).

### III. ANALYSIS

Petitioner raises three challenges to the DOL's final decision denying him wage-loss benefits. Petitioner first argues that the DOL's decision was contrary to the evidence. ECF No. 13 at 13, 19. Second, Petitioner argues that the DOL's decision was arbitrary and capricious because the DOL relied on improper factors in denying his claim for wage-loss benefits. ECF No. 13 at 17. Third, Petitioner argues that the decision was arbitrary and capricious because the DOL failed to request an opinion from a medical consultant on whether a causal relationship existed between Petitioner's covered illnesses and his wage-loss. ECF No. 13 at 18. The Court will address these contentions in turn.

#### A. The Evidence Supported the DOL's Decision

Petitioner contends that the evidence before the DOL established that he experienced wage-loss due to his accepted covered conditions during the timeframe alleged. ECF No. 13 at 13, 19. Petitioner objects to findings by the DOL that although he claimed wage-loss beginning

4

in 2005, he continued to work until 2007. Petitioner further objects to findings by the DOL regarding the reasons Petitioner was unable to work, specifically the DOL's determination that Petitioner failed to provide sufficient medical evidence that his covered conditions prevented him from working. ECF No 13 at 21.

An individual seeking wage-loss benefits under Part E of the EEOICPA must show (1) that he experienced an actual loss of wages beginning in an identifiable month; and (2) that the actual loss of wages was caused by his covered illness. 42 U.S.C. § 7385s-2(a)(2)(A)(i); *Lott*, 2014 WL 5169078, *5 (D. Colo. Sept. 26, 2014) (unpublished). The burden of establishing this "rests squarely with the claimant." *Trego v. U.S. Dep't. of Labor*, 681 F.Supp.2d 894, 898 (E.D. 2009). Thus, the petitioner "is required to show the period of wage-loss at issue is *causally related to* the covered illness by a preponderance of the evidence." *Barrie v. U.S. Dep't. of Labor*, 597 F.Supp.2d 1235, 1242 (D. Colo. 2009).

The OWCP has promulgated regulations regarding the evidence applicable to determining whether an individual experienced compensable wage-loss under Part E of the EEOICPA. 20 C.F.R. § 30.805. The regulation states that the "OWCP…requires the submission of rationalized medical evidence of sufficient probative value to establish that the period of wage-loss at issue is causally related to the covered Part E employee's covered illness." *Id.* The Federal EEOICPA Procedure Manual further discusses evidence relevant to this determination. These types of evidence include narrative reports from physicians, return to work slips signed by a physician, a physician's office notes, and a contract medical consultant's opinion. Procedure Manual Chapter 2-1400.9(a)-(d). Importantly, "a physician's narrative report is to contain an explanation about the causal relationship between the covered illness and the period(s) of wage-loss and reference medical evidence that is contemporaneous to the claimed period(s) of wage

5

loss." *Id.* The manual explains that "a report that is speculative in nature, or is not well-rationalized is not considered to be of sufficient probative value." *Id.* Further, in regard to physician's notes, the Procedure Manual states that they "are to indicate that the employee had stopped working, reduced his work hours or missed work due to the covered illnesses." *Id.*

Turning to the DOL's final decision in this case, the DOL found that Petitioner was a covered uranium mine worker whose claim for benefits under Part E was accepted based on the covered illnesses of pulmonary fibrosis, fibrosis of the lung, silicosis, pneumoconiosis, COPD, and asthma. AR 178. The DOL further found that Petitioner claimed wage-loss benefits beginning in 2005, but that he continued to be employed from 2005 through 2007. AR 178. As to the medical evidence, the DOL found that although Dr. Aragon stated that Petitioner became disabled due to breathing and respiratory problems, Dr. Aragon did not cite any specific dates or contemporaneous medical evidence in which he assessed that Petitioner was unable to work due to the accepted covered illnesses. AR 178. Similarly, the DOL found that while Dr. Sood opined that Petitioner suffered wage loss beginning in 2005 due to exposure to dust, he did not cite any specific dates or contemporaneous medical evidence in which he or any other physician assessed that Petitioner was unable to work due to the accepted covered illnesses. AR 178. Accordingly, the DOL concluded that Petitioner failed to submit sufficient probative evidence that he had to quit work or that he was terminated from any job due to his covered illnesses. AR 178-79.

Much of Petitioner's argument on this point is a restatement of the medical evidence before the DOL; specifically, Dr. Sood and Dr. Aragon's reports. For instance, Petitioner points out Dr. Sood's discussion of his treating notes of Petitioner, including Petitioner's reports during 2005 and 2006 of breathing difficulties that Dr. Sood stated were consistent with COPD and asthma. AR 528-29. Further, Petitioner emphasizes Dr. Sood's opinion that

> Using a more likely than not level of certainty, I can conclude that [Petitioner's] inhalation dust exposure at the workplace was a contributory factor towards his respiratory symptoms related to his covered conditions that led to his wage loss. While I am unable to support his claim prior to 2005, I would however support his claim for missed wages during the period of 2005 till present. My stand is based on evidence in his medical records that he has had respiratory symptoms and lung disease related to his covered conditions since 2005 which have persisted till the present time that has impaired his ability to work in dusty environments.

AR 529. Petitioner likewise highlights Dr. Aragon's statement that Petitioner's conditions caused him to take off work "an unusual number of times." AR 230. Dr. Aragon continued that "[w]hen [Petitioner] felt better he would return to work but continued to have episodes of respiratory problems…[and h]e eventually became unable to work due to his breathing and respiratory problems." AR 230.

Petitioner further highlights his testimony at the hearing regarding occasions where his conditions prevented him from working. Petitioner testified that he experienced breathing difficulties due to dust inhalation and that these episodes made him weak and dizzy. AR 242-43, 256, 260. Petitioner testified that these difficulties forced him to stop working certain construction jobs beginning in 2002 and continuing throughout the time period at issue. AR 254-255; 259-260.

As the DOL determined, however, despite Dr. Sood's and Dr. Aragon's attribution of Petitioner's conditions to his inability to work, neither Dr. Sood nor Dr. Aragon recounted specific time periods Petitioner missed work or provided a sufficient basis for opining that Petitioner actually missed work due to his covered illnesses. *See* AR 179 ("neither Dr. Sood nor Dr. Aragon cited any specific dates they assessed you were unable to work due to the accepted covered illnesses"). The DOL's finding on this point is consistent with the Procedure Manual and supported by the evidence. For instance, Dr. Aragon's report does not state whether the "unusual number of times"

7

Petitioner missed work even occurred during the time period that Petitioner is claiming wage loss. Ultimately, both the treatment notes referenced by Dr. Sood and Dr. Aragon, while probative of Petitioner's condition during the relevant time period, fall short of providing a foundation for their opinion that Plaintiff was either terminated or missed work during this timeframe due to the covered conditions.  Thus, the DOL essentially concluded that absent contemporaneous medical records from these sources indicating that Petitioner was unable to work due to his covered conditions, Dr. Sood's and Dr. Aragon's opinions were post-hoc speculation that gaps in Petitioner's work history were attributable to his covered conditions.  *See* Procedure Manual, Chapter 2-1400.9(a) ("A [physician's] narrative report that is speculative in nature, or is not well-rationalized is not considered to be of sufficient probative value.").

      This conclusion is particularly apparent in the time period between 2005—the time period Petitioner first claimed wage loss—and 2007. As the DOL explained, while "Dr. Sood opined that [Petitioner was] unable to work after 2005 due to the accepted covered illnesses, [Petitioner] clearly worked from 2005 to 2007." AR 179.  Contrary to Petitioner's argument, the DOL's finding that Petitioner worked during this time period was not a conclusion that Petitioner was required to establish total disability (ECF No. 13 at 14), it was the recognition by the DOL that Dr. Sood's opinion regarding the reasons Petitioner missed work were contradicted by the record.  For instance, the DOL specifically noted at least two occasions where gaps in Petitioner's employment during the relevant time period were due to the end of the construction projects. AR 179.  *See Trego*, 681 F.Supp.2d 894, 897 (rejecting argument that the petitioner's wage-loss was due to COPD where the evidence showed that he was laid off due to a reduction in force);

8

Procedure Manual Chap. 2-1400.5(a) (stating that wage-loss does not include circumstances in which an "employee was not earning wages because of a Reduction-in-Force at his job before the trigger month"). The reasons these jobs ended were acknowledged by Petitioner. AR 253, 257. Further, on at least one other occasion Petitioner was terminated due to his performance. AR 254. Although Petitioner testified his inability to perform was due to his health condition, the DOL found that no independent contemporaneous medical evidence indicating that Petitioner was unable to perform the job was submitted to support Petitioner's claim. AR 179. Thus, there was contradictory evidence regarding the reasons Petitioner missed work during the claimed period of wage-loss and it is not for this Court to reweigh the evidence and question how the DOL resolved these discrepancies. *See Utahns for Better Transp. V. U.S. Dep't. of Transp.*, 305 F.3d 1152, 1164 (10th Cir. 2002) (stating that in reviewing administrative agency decisions, it is not for the court to substitute its own judgment for that of the agency).

    Furthermore, to the extent Petitioner argues that despite the fact that his employment ended due to the end of the construction projects, he is entitled to wage-loss benefits because he was unable to secure additional employment due to his illnesses, such argument is foreclosed by *Trego*. As the Court explained, Part E does not compensate individuals for their loss of earning capacity or potential wages. 681 F.Supp.2d at 898 n.2. Instead, a claimant must show, in part, that he "held a job at which he was earning wages…[and] that he experienced a loss in those wages during a particular month." *Id.* at 898. That is, Part E "contemplates reductions in actual wages, not reductions in earning potential." *Id.*

Finally, while Petitioner further discusses medical evidence dated after 2007, this evidence does not address the important defect in Petitioner's claim. Petitioner broadly claimed that his period of wage loss began in 2005, yet the statute requires a claimant to identify a "trigger month" that the period of wage loss began.[1] 42 U.S.C. § 7385s-2(a)(2)(A)(i); *Lott*, 1014 WL 5169078, *6. *See also* Procedure Manual Chap. 2-1400.4(c) (stating that a general requirement for wage-loss is the "trigger month," which is the "particular year and month…that the employee first experienced wage-loss as a result of the covered illness"). Given the lack of specificity in the medical opinions provided by Dr. Sood and Dr. Aragon as to the employment gaps allegedly related to Petitioner's covered illnesses, it appears as though Petitioner submitted his claim and evidence with the intention that the DOL ultimately determine which periods of unemployment throughout the claimed timeframe were compensable. However, determining the "trigger month" is not a moving target depending on what the medical evidence establishes. Instead, it was Petitioner's burden to identify the month he experienced an actual loss of wages due to his covered conditions and then support that period of wage loss with sufficient probative evidence that it was causally related to his covered conditions. *See Lott*, 2014 WL 5169078, *6 ("the statutory wage-loss provision requires that a claimant prove that there was a 'trigger' month when he first experienced wage loss as a result of a covered illness"). The DOL reasonably concluded that Petitioner failed to meet this

---

[1] In briefing, Petitioner contends that the trigger month was August 2005. ECF No. 15 at 7. However, there is no indication that Petitioner identified this month in proceedings before the DOL. Further, the record establishes that Petitioner was let go from his position in August 2005 due to performance issues. AR 253-55. While Petitioner attributes his performance issues to his covered conditions, the DOL determined that without contemporaneous medical evidence such as physician notes indicating that Petitioner was physically unable to perform the job, Petitioner's testimony, by itself, was insufficient to establish this fact. AR 179; Procedure Manual, Chapter 2-1400.9(c) (stating that physician's notes "are to indicate that the employee had stopped working, reduced his work hours or missed work due to the covered illnesses").

burden in the timeframe alleged and the Court concludes that DOL's decision was ultimately consistent with the record.

### B. The DOL Did Not Rely on Improper Factors

Petitioner contends that the DOL relied on improper factors in reaching its decision. ECF No. 13 at 17. Specifically, Petitioner highlights evidence before the DOL regarding his book and television ventures related to his previous rodeo career. ECF No. 13 at 18.

The problem with Petitioner's argument is that although Petitioner recounts the evidence before the DOL regarding these ventures, Petitioner cites no specific finding or conclusion by the DOL relying on this evidence to support its decision. Petitioner's argument on this point merely summarizes the evidence and contends that the DOL improperly took this evidence into account.  Based on the Court's review of the DOL's decision, the only mention of these facts in the decision was the DOL's summary of the evidence before the DOL.  This included reference to a LinkdIn profile indicating that Petitioner is the owner and managing partner of Ruff Day Productions, incorporation information regarding the company, a notation that earnings from the enterprise were not documented, and that Petitioner testified that it was never an active company or generated income. AR 176-177. However, at no point did the DOL refer to this evidence in reaching its conclusion that Petitioner failed to provide sufficient probative evidence that the claimed periods of wage-loss were causally related to his covered conditions. Accordingly, the Court rejects this argument.

### C. The DOL Was Not Required to Obtain an Opinion by the CMC

Petitioner contends that the DOL's decision was arbitrary and capricious because the DOL failed to act in accordance with the DOL's Procedure Manual by not obtaining the opinion of a contract medical consultant (CMC).  ECF No. 13 at 18.  Petitioner contends that the DOL was required to obtain such an opinion because the DOL found Dr. Sood's opinion regarding the onset of Petitioner's wage-loss inconclusive.  ECF No. 13 at 16, 18.

Contrary to Petitioner's argument, however, the decision to seek the opinion of a CMC is discretionary. *See* Procedure Manual, Chapter 2-1400.9(d) (stating that the claims examiner "must use discretion when determining if a CMC referral is warranted"). While the claims examiner may request the opinion of a CMC when the causal relationship between the covered conditions and wage-loss is inconclusive, it is doubtful that a CMC's opinion in this case would have remedied the fact that evidence in the record indicated that portions of Petitioner's employment gaps in the time period he claimed wage-loss were due to factors unrelated to his covered conditions. Accordingly, the Court concludes that the DOL's decision not to obtain a CMC opinion was not arbitrary and capricious.

### IV.   CONCLUSION

For the foregoing reasons, the Court DENIES the petition (ECF No. 1) and affirms the DOL's decision.

**IT IS SO ORDERED.**

_____
UNITED STATES MAGISTRATE JUDGE
Sitting by Consent

12